UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| REGINA HARDY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:15-CV-433 JD |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

On September 22, 2015, Plaintiff Regina Hardy filed a complaint in this Court seeking review of the final decision of the Defendant Commissioner of Social Security denying her application for social security disability benefits [DE 1]. The matter is ripe for decision [DE 16; DE 22]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

## I. FACTS

Hardy filed an application for disability insurance benefits on November 16, 2012, alleging an onset date of September 25, 2012. At that time, Hardy was fifty-one years old, had a high school education, and for over twenty years performed heavy unskilled work as a custodian. Hardy alleges that she became disabled as a result of various physical problems, including post-surgery right shoulder pain, post-surgery right ankle pain, bi-lateral knee pain and total left knee replacement, sleep apnea, lower back pain, diabetes, and high blood pressure. Hardy is also limited by her extreme obesity and documented body mass index ("BMI") of 48.[1] R. at 345. Both

---

[1] The social security rulings recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and

bariatric surgery and further right ankle surgery[2] were discussed with Hardy in early 2012. R. at 36, 38, 208-26, 228-67, 273-75, 375-82. But because Hardy was also experiencing "active painful range of motion with limiting factors of pain" in both knees[3] and multiple steroid injections in the left knee proved ineffective, she first underwent a total left knee replacement in September 2012 by treating orthopaedic surgeon, Dr. Jeffrey Yergler. *Id*. After having the surgery and despite progressing with a normal recovery, Hardy continued to experience left knee pain. R. at 268-71, 333. On December 3, 2012, Dr. Yergler prescribed four weeks of physical therapy and indicated that Hardy could return to work with "no prolonged standing, no kneeling, crawling or squatting." R. at 369. In April 2013, Hardy went for physical therapy on account of experiencing left knee pain and it was reported that she had retired because she could not return to work with her restrictions. R. at 370, 410.

With respect to state agent opinions, on January 18, 2013, state agent consultative examiner, Dr. Onamusi, completed an internal medicine evaluative report which noted that Hardy had minimal discomfort along her lower lumber region, moderate tenderness in her right ankle joint, and mild-to-moderate tenderness in her knees. R. at 343-47. Hardy also had a reduced range of motion in her knees and right ankle. Dr. Onamusi diagnosed Hardy with

---

representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. SSR 02-1p.

[2] Hardy underwent an MRI of her right ankle on March 19, 2012, due to complaints of pain and swelling when standing and walking. The MRI showed progressive tendinosis and partial thickness tear of her tibial tendon, flat feet, early stages of lateral talocalcaneal impingement, probable sinus tarsi syndrome, a heel spur, mild tendinosis of the Achilles tendon, and partial fatty muscle atrophy of the abductor digit minimi. R. at 196.

[3] X-rays of Hardy's knees revealed severe arthritis, bone spurs, subchondral cysts and subchondral sclerosis with bilateral osteoarthritis, left bone on bone medial, and right bone on bone lateral. R. at 206-08.

diabetes mellitus and chronic lower back and polyarticular (arthritic) pain status post-surgery in multiple joints (right ankle, bilateral knees, and right shoulder). Dr. Onamusi opined that Hardy was capable of performing "sedentary to light" physical demand activities.

After reviewing Dr. Onamusi's findings and Hardy's other medical records, in January and April 2013, state agency consultants opined that Hardy could actually perform light work (which included the ability to stand and/or walk for six hours, as well as sit for six hours, in an eight hour workday with normal breaks), with some specified postural and environmental limitations, including in relevant part that she must avoid concentrated exposure to wetness and hazards, unprotected heights, and slippery uneven surfaces. R. at 46-53, 55-63. The state agents anticipated that Hardy would continue to improve with her post-operative recovery.

Hardy's application was denied initially on January 29, 2013, and was then denied on reconsideration on April 3, 2013. On March 14, 2014, a hearing was held before Administrative Law Judge Christa Zamora ("ALJ"). During the hearing, testimony was received from Hardy and Mr. Thomas Gusloff (a vocational expert) ("VE").

Hardy testified that she continues to suffer from knee and ankle problems, and that she still needed to undergo a right knee replacement and ankle reconstruction. Hardy indicated that if she stood for too long, then she experienced knee swelling and stabbing pain. Hardy believed that she could stand for thirty minutes, sit for one hour, and walk a couple of blocks before needing a break. She could also lift ten to twenty pounds. Hardy testified that she used a hospital chair for getting dressed and showering, and she sometimes used a motorized cart for shopping. In addition, Hardy indicated that she had trouble sleeping on account of experiencing pain.

The VE testified that based strictly on the (relevant) hypothetical posed to him (which offered an assigned residual functional capacity ("RFC")[4] of light work, limited by no climbing of ladders, ropes, and scaffolds, occasional climbing of ramps and stairs, occasional balancing, kneeling, stooping, crawling, or crouching, along with frequent overhead reaching and "frequent" exposure to unprotected heights, moving mechanical parts, and wetness), Hardy would not be able to perform her past work, but she could perform unskilled work as a photo copy machine operator, marker-retail, and inserting machine operator. The VE confirmed that a person would not be able to perform these particular jobs or other jobs at the light exertional level if an at-will sit-stand option was required.

The ALJ issued a decision on March 21, 2014, denying Hardy disability benefits and concluding that Hardy was not disabled under the Social Security Act because she was able to perform other work in the national economy (step 5). The Appeals Council then denied Hardy's request for review on July 24, 2015, making the ALJ's decision the final determination of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Hardy seeks review of the Commissioner's decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[4] Residual Functional Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  DISCUSSION

Disability and supplemental insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant

has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

> 1. Whether the claimant is currently engaged in substantial gainful activity;
>
> 2. Whether the claimant has a medically severe impairment;
>
> 3. Whether the claimant's impairment meets or equals one listed in the regulations;
>
> 4. Whether the claimant can still perform relevant past work; and
>
> 5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a Listing is not met or equaled, then in between steps three and four, the ALJ must assess the claimant's residual functional capacity, which, in turn, is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Hardy appeals the ALJ's failure to properly consider the restrictions imposed by her treating orthopaedic surgeon, Dr. Yergler. She also contends that the ALJ failed to adequately articulate how her extreme obesity impacts her ability to work. Because the Court agrees, it need not address her third contention relative to the ALJ's discrediting of Hardy's claimed limitations.

Ultimately, until substantial evidence supports the RFC determination, there is no way for this Court to affirm the finding that Hardy is capable of performing work.

## IV. ANALYSIS

### A. RFC

#### i. Treating Physician Opinion

Disability cases typically involve three types of physicians: 1) a treating physician who regularly provides care to the claimant; 2) an examining physician who conducts a one-time physical exam of the claimant; and 3) a reviewing or non-examining physician who has never examined the claimant, but read the claimant's files to provide guidance to an adjudicator. *See generally* 20 C.F.R. § 404.1527(d). The opinion of the first type, a "treating physician," is ordinarily afforded special deference in disability proceedings.[5] The regulations governing social security proceedings instruct claimants to that effect:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).

---

[5] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c; *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 81 FR 62560 at 62573-62574 (Sept. 9, 2016) ("we would no longer give a specific weight to medical opinions . . . this includes giving controlling weight to medical opinions from treating sources . . . [and] [w]e would not defer or give any specific evidentiary weight, including controlling weight, to any . . . medical opinion, including from an individual's own healthcare providers."). As Hardy's application was filed before March 27, 2017, the treating physician rule applies. *See id*. § 404.1527.

The treating physician's opinion is *not* entitled to controlling weight, however, where it is not supported by the objective medical evidence, where it is inconsistent with other substantial evidence in the record, or where it is internally inconsistent. *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995)). Ultimately, an ALJ's decision to give lesser weight to a treating physician's opinion is afforded great deference so long as the ALJ minimally articulates her reasons for doing so. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). The Seventh Circuit has deemed this very deferential standard to be "lax." *Id.* Nevertheless, the ALJ must offer "good reasons" for discounting a treating physician's opinion. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

If the ALJ decides the treating physician's opinion should not be given controlling weight, the ALJ is "required by regulation to consider certain factors in order to decide how much weight to give the opinion[.]" *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). These factors are set forth in 20 C.F.R. § 404.1527(c)(1)-(5) and include: 1) the "length of the treatment relationship and the frequency of examination;" 2) the "[n]ature and extent of the treatment relationship;" 3) "[s]upportability;" 4) consistency "with the record as a whole;" and 5) whether the treating physician was a specialist in the relevant area.

In this case, the ALJ did not identify how much weight she assigned to the treating orthopaedic surgeon Dr. Yergler's December 2012 opinion that any work to be performed by Hardy could not include prolonged standing. R. at 369. Despite Dr. Yergler's opinion, the ALJ determined that Hardy had the RFC to stand and/or walk for six hours in a workday without an at-will sit-stand option. The Commissioner discounts Dr. Yergler's December 2012 note as nothing but a response to Hardy's telephone message. But this reason (or any reason) for discounting Dr. Yergler's prescribed limitations was not provided by the ALJ. In other words,

not only did the ALJ fail to indicate what weight she afforded the work-release limitations imposed by Dr. Yergler, but she did not even identify the fact that such limitations existed in the record.

Given the ALJ's acknowledgement that Hardy continued to report left knee pain into 2013 and was referred to physical therapy for strengthening, it was imperative for the ALJ to indicate whether she agreed or disagreed with Dr. Yergler's prior opinion and to provide a sound explanation for her decision to (presumably) reject it over the state agents' opinions. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *see* 20 C.F.R. § 404.1527(c)(1)-(5). Ultimately, it was error for the ALJ not to evaluate this evidence and explain its significance. 20 C.F.R. § 404.1527 ("[r]egardless of its source, we will evaluate every medical opinion we receive.").

While the Court is able to infer that Dr. Yergler's restrictions were not given controlling weight, since the state agents were the only doctors who opined that Hardy could perform light work (as opposed to sedentary work), consistent with the ALJ's ultimate RFC determination, the ALJ never adequately explained why the non-treating opinions of state agents trumped those of Dr. Yergler. Instead, the ALJ has put this Court in the position of providing a treating physician analysis, which is not the Court's role in a substantial-evidence determination. *Lopez*, 336 F.3d at 539. Although the ALJ did address other notations by Dr. Yergler demonstrating normal clinical examinations, Dr. Yergler's December 2012 work restrictions directly contradicts the RFC finding for light work, and the ALJ was required to provide a "good reason" before discounting the opinion. *Scott*, 647 F.3d at 739. On remand, the ALJ should at least acknowledge Dr. Yergler's opinion in this respect, explain what weight to provide it, and indicate how it impacts the RFC determination.

### ii. Obesity

Hardy further argues that the ALJ erred in her analysis of the limitations caused by Hardy's BMI. Specifically, Hardy contends that the ALJ's analysis of her obesity was too cursory to permit a meaningful review. The Court agrees. Remand is necessary for the ALJ to consider, with greater explanation, how Hardy's extreme obesity impacts her RFC.

In determining a claimant's RFC, the ALJ must consider any limitation in function caused by obesity. Specifically, SSR 02–1p requires an ALJ to assess the effect obesity has upon the individual's ability "to perform routine movement and necessary physical activity within the work environment" because individuals with obesity "may have problems with the ability to sustain a function over time." SSR 02-1p. The Social Security Administration recognizes that obesity may limit the person's exertional abilities (e.g., sitting, standing, walking, lifting, carrying, pushing, and pulling), ability to perform postural functions (e.g., climbing, balancing, stooping, and crouching), and ability to work on a regular and continuing basis. *Id*. For instance, some people with obesity also have sleep apnea that can lead to drowsiness or have arthritis affecting a weight-bearing joint that can cause more pain and limitation than might be expected from the arthritis alone. *Id*.; *see Barrett v. Barnhart,* 355 F.3d 1065, 1068 (7th Cir. 2004) ("Even if Barrett's arthritis was not particularly serious in itself, it would interact with her obesity to make standing for two hours at a time more painful than it would be for a person who was either as obese as she or as arthritic as she but not both."); *see also Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (finding error where the ALJ failed to sufficiently consider the medical evidence including failing to account for the exacerbating effect of claimant's obesity on her ability to stand when claimant had to sit while showering and shopping).

In the instant case, the ALJ identified Hardy's obesity as a severe impairment. The ALJ then broadly indicated that "the claimant's obesity was considered in relation to the musculoskeletal, respiratory, and cardiovascular body systems listings as required by the Ruling. . . [and] [t]he undersigned considered the effects of the claimant's obesity singly and in combination with her other severe and non-severe impairments in reducing the claimant's residual functional capacity pursuant to Social Security Ruling 02-1p."

But this conclusion by the ALJ is not an analysis. The cursory conclusion of the ALJ does not specify the effect that obesity (either by itself or in combination with Hardy's other impairments) has upon Hardy's ability to perform routine and necessary work movements or to sustain fulltime work. The ALJ was required to "articulate at some minimal level [her] analysis of the evidence" with respect to Hardy's obesity and its believed limiting effects in order to permit an informed review. *Zurawski*, 245 F.3d at 887 (citation omitted). The failure to do so is reversible error given that Hardy's medical records consistently document her obesity, along with her suffering from sleeping problems, arthritis, knee pain, and ankle pain. Hardy also reported that she had to sit in order to shower, dress, and shop, and that she was limited to standing for thirty minutes or walking only a couple of blocks before needing a break. Moreover, Hardy reported needing further surgery on her right knee and ankle, and the option of bariatric surgery was discussed with her. Thus, it appears unavoidable that Hardy's weight of almost 300 pounds has a serious impact on her ability to function and perform light work. *See Stage*, 812 F.3d at 1126 (reasoning that it "strains credulity to find that a claimant who needed a hip replacement and had to sit while showering and shopping for groceries was capable of standing for six hours a day in a workplace."). Consequently, the ALJ's decision cannot stand since it lacks an adequate discussion of the issue relative to Hardy's obesity. *Lopez*, 336 F.3d at 539. On

remand, the ALJ will need to address the degree to which Hardy is capable of performing light work given her extreme obesity.

### iii. Light vs. Sedentary Work

For the reasons stated herein, the ALJ's errors require remand because the ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," based upon all of the relevant evidence in the record, even as to limitations that are not severe. SSR 96–8p. In addition, the RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence." *Id*. However, the ALJ's opinion in this case fails to provide an adequate discussion of the medical evidence with respect to Dr. Yergler's work-release restrictions and the effects of Hardy's obesity, which then impacted the ALJ's determination that Hardy was capable of performing light work.

Imperative to this appeal is the fact that at the time of Hardy's alleged disability onset date, she was classified by the regulations as an individual "closely approaching advanced age." 20 C.F.R. § 404.1563(d). When a claimant falls within this age category, the Commissioner "will consider" that the claimant's age, along with any severe impairments and limited work experience, "may seriously affect [the claimant's] ability to adjust to other work." *Id*. This is so, because advancing age is considered to be "an increasingly limiting factor in the person's ability to make such an adjustment." *Id*. at § 404.1563(a). Ultimately, if Hardy's RFC was limited to the performance of sedentary work, the Medical-Vocational Guidelines would indicate that given her age, education, relevant past work, and lack of transferable skills, then she would ordinarily be

considered disabled. 20 C.F.R. pt. 404, Subpt. P, Appendix 2, grid rule 201.12.[6] This further demonstrates the importance of having an adequately supported RFC finding for Hardy.

   B. **Step 5**

Ultimately, without the RFC determination being supported by substantial evidence, the Court is unable to rely on the ALJ's determination that Hardy is capable of performing other work in the economy (step 5). More accurately stated, in deciding what work Hardy was capable of performing, the ALJ relied on the VE's testimony, which in turn, relied on the ALJ's hypothetical question that incorporated the inadequately supported RFC determination.

The law requires the ALJ to incorporate into the hypotheticals those impairments and limitations that the ALJ accepts as credible.[7] *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). Here, the ALJ's insufficiently supported RFC findings led the ALJ to ask hypotheticals of the VE which omitted Hardy's claimed (and potentially credible) limitations caused by her various physical impairments.[8]

---

[6] The medical vocational guidelines, commonly known as the grids, are tables which evaluate a claimant's ability to work by matching her age, education, and work experience with her work capability. 20 C.F.R. pt. 404, Subpt. P, Appendix 2. Hardy was 51 years old as of her onset date. As a result, grid rules 201.09-201.16 are relevant here. In particular, grid rule 201.12 appears most applicable given that Hardy is a high school graduate who could not perform her past unskilled work and did not seemingly have transferable skills. *Id.*

[7] The ALJ must also correct the inconsistency created when she credited the state agent opinions' indicating that Hardy had to avoid concentrated exposure to wetness, hazards, and unprotected heights, but then crafted an RFC which allowed Hardy to have frequent exposure to those same environmental conditions.

[8] In fact, the VE testified that if Hardy needed an at-will sit-stand option, then she could not perform light work.

13

Ultimately, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Hardy is capable of performing.[9] *See Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (the ALJ must determine the claimant's RFC before performing steps 4 and 5 because a flawed RFC typically skews questions posed to the VE); SSR 96-8p. Thus, until the hypotheticals presented to the VE include the functional limits that the ALJ accepts as credible, and the ALJ adequately explains the claimant's actual limitations and resulting RFC based on the relevant medical evidence, 20 C.F.R. §§ 404.1545, 404.1546(c), step five cannot be affirmed in this appeal. *See Young,* 362 F.3d at 1003-05.

The remedy for the shortcomings noted herein is further consideration, not an award of benefits.

## V. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: September 11, 2017

                                                           /s/ JON E. DEGUILIO
                                                           Judge
                                                           United States District Court

---

[9] Admittedly, the Seventh Circuit has occasionally concluded that a VE has familiarity with the claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations and the VE considered that evidence when indicating the type of work the claimant is capable of performing. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, n. 5 (7th Cir. 2010) (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young*, 362 F.3d at 1003; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Ragsdale v. Shalala*, 53 F.3d 816, 819-21 (7th Cir. 1995); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992)). This exception does not apply here, since the VE never indicated having reviewed Hardy's medical records, nor did he indicate in his responses having relied on those records or the hearing testimony. Rather, the VE's attention was on the limitations of the hypothetical person posed by the ALJ, and not on the record itself or the limitations of the claimant herself. *Id*. (citing *Simila*, 573 F.3d at 521; *Young*, 362 F.3d at 1003).